UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TERRENCE REYNOLDS,

                    Plaintiff,

        -against-

THE CITY OF NEW YORK,

                  Defendant.
------------------------------------------------------------------X

Docket No.: 22-CV-1910
(VEC)

**AMENDED COMPLAINT**

Jury Trial Demanded

     Plaintiff, Terrence Reynolds, by and through his attorneys, RICOTTA & MARKS, P.C., allege upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983, to redress a violation of Plaintiff's constitutional rights under the First Amendment of the United States Constitution, as well as violations in the terms, conditions and privileges of employment of Plaintiff by the Defendant, and any other cause of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and aforementioned statutory provisions.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff, Terrence Reynolds ("Reynolds"), was and still is a resident of Suffolk County, State of New York.

5. Defendant, the City of New York (Department of Environmental Protection) was and still is a municipal entity located at the Ward Island Sewage Treatment Facility, 7 Ward's Island Bridge, New York, New York 10035.

## FACTS

6. In or around June 2004, Terrence Reynolds ("Reynolds"), was hired by the New York City Department of Environmental Protection ("DEP") as a sewage treatment worker. Throughout his employment, Reynolds was qualified to perform his job and performed the essential functions of his job in a satisfactory manner.

7. The DEP serves to protect public health by, *inter alia*, insuring that clean drinking water is supplied to the public, and reducing hazardous materials pollution within the environment.

8. During the course of his employment with Defendant, Reynolds was an outspoken critic of conduct that took place at Ward's Island that was illegal and amounted to public health and safety concerns. Reynolds' speech, in this regard, was not part of his job duties and responsibilities, but rather was done as a citizen who was concerned about the impact the behaviors at DEP could have on public health.

9. For example, many of the employees at Ward's Island, including a coworker Michael Parente, would consume alcohol and attend work while in a state of intoxication, thereby impeding their ability to adequately perform their job, which is an essential function to maintain public health.

10. Moreover, Reynolds reported, among other things, illegalities occurring at Ward's Island, including drug dealing, fraudulent signing of paperwork concerning chemical deliveries, and theft of PPE supplies. Again, these actions presented a clear potential risk to the health and safety of the public, and reporting these issues was neither within the scopt of Plaintiff's job duties, nor did they provide him any personal benefit. Rather, his reporting of the aforementioned conduct created personal harm as he was subjected to harassment and retaliation as a direct result of his speech.

11. While Plaintiff did, throughout his employment and after the retaliation against him commenced, complain about issues that directly impacted him, his complaints regarding the illegalities that were occurring at DEP were not within the scope of his job, and related to community concerns rather than his own personal concerns, as they were specifically targeted to uncover wrongdoing and breaches of public trust that potentially impacted public health.

12. In or around early 2020, Reynolds reported this conduct to supervisors, including Gerould McCoy ("McCoy") and Haman (first name unknown) ("Haman") as well as the City EEO office.

13. Prior to reporting these incidents and issues, Reynolds had little to no disciplinary history or interpersonal issues with coworkers.

14. Thereafter, however, starting in or around March 2020, Reynolds began to be the victim of a concerted retaliatory attack by supervisors and coworkers who were aware that he had blown the whistle on the various illegalities and health and safety issues that were taking place at Ward's Island. The timing of this change in behavior toward Reynolds and the treatment of him made clear that this retaliation was a byproduct of his engaging in protected speech.

15. In addition to constant hostility, false accusations of wrongdoing, and threats of reprisal, Reynolds was also transferred to the day shift, after having worked seventeen (17) years on the night shift, causing him to suffer a significant reduction in available overtime hours.

16. Moreover, on May 28, 2020, Reynolds was assaulted by Parente, causing him bruising, swelling, and shoulder nerve paid radiating to his fingers, which has caused him to require medical treatment thereafter. Parente's assault of Reynolds was a direct result of Reynolds' speech relating to Parente.

17. Despite Defendant being aware of this assault and the issues Reynolds raised, Defendant, and their agents, further retaliated against Reynolds by subjecting him to written discipline based on false accusations and/or by goading Reynolds into a verbal altercation and then documenting same in an effort to create a paper trail to remove him from DEP due to his whistleblowing activity.

18. As a byproduct of this retaliation, on or about November 12, 2021, Reynolds was terminated after a hearing whereat numerous witnesses presented false and untrue testimony. But for Reynold's first amendment speech, however, these charges and the false allegations that formed the basis for them, would not have occurred or been pursued.

19. Moreover, this hearing did not present Reynolds with a full and fair opportunity to litigate Reynolds' First Amendment retaliation claim, as Reynolds did not have the same rights and opportunities to pre-hearing discovery and depositions as he would in this venue. Further, the Hearing Officer at the OATH hearing was charged with determining if the conduct alleged occurred, not whether Reynolds engaged in First Amendment speech and was retaliated for

same. In fact, the Hearing Officer is not vested with the authority to render such a finding and award damages for same.

20. The Hearing Officer's determination was also negatively impacted by the reality that numerous members of the DEP who were engaging in retaliatory conduct toward Reynolds due to his speech, banded together to submit false narratives about Reynolds and his conduct.

21. Ultimately, Defendant and their agents engaged in a campaign of constantly harassing Reynolds and seeking to elicit a reaction from him, to then use that as a pretext to terminate him due to his protected speech and reporting of illegalities that were occurring at DEP that created a real potential for harm to the public health and safety. This conduct was engaged in and condoned by supervisors and policymakers for the DEP.

22. As a result of the foregoing, Reynolds has suffered financial damages, future financial damages and damage to his pension benefits, as well as emotional and physical harm.

## AS A FIRST CAUSE OF ACTION
## FOR RETALIATION UNDER FEDERAL LAW

23. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

24. Defendant, while acting under color of law, retaliated against Plaintiff as detailed above, depriving Plaintiff of his constitutional rights, as secured by the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983. The Defendant has intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights in that the Defendant's custom or practice of retaliating against Plaintiff and subjecting him to a hostile work environment due to

Plaintiff's speech, in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983. Such deliberate indifference may be inferred in the following ways:

a. The Defendant's custom or practice of discriminating and/or retaliating against Plaintiff based on his sex/gender and/or her opposition to discriminatory practices. The discriminatory and retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

b. Supervisors failed to properly investigate and address allegations of retaliation and/or discrimination.

c. Inadequate training/supervision was so likely to result in the harassment, and/or retaliation that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

d. Policymakers engaged in and/or tacitly condoned the harassment and/or retaliation.

WHEREFORE, Plaintiff demands judgment against Defendant, where applicable, for all compensatory, emotional, physical, and punitive damages (against individual defendants, where applicable), lost pay, front pay, injunctive relief, attorney fees and costs, and any other damages permitted by law.  Plaintiff demands a trial by jury.

Dated: Long Island City, New York
       May 20, 2022

                                                 Respectfully submitted,

                                                 RICOTTA & MARKS, P.C.
                                                 Attorneys for Plaintiff
                                                 24-11 41st Avenue, Second Floor
                                                 Long Island City, New York 11101
                                                 (347) 464-8694

                                                 _____/s_____
                                                      Thomas Ricotta